## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **DEBRA MOORE and GAIL MACMURRAY, Individually, And In A Representative Capacity For All Persons Identified By RSMo. 573.080**<br><br>**Plaintiffs.**<br><br>**v.**<br><br>**WORTH COUNTY NURSING HOME DISTRICT D/B/A WORTH COUNTY CONVALESCENT CENTER**<br><br>and<br><br>**BEVERLY MILLER**<br><br>and<br><br>**JENNIFER RUNNELS**<br><br>and<br><br>**AMRIT P. SINGH, MD**<br><br>**Defendants.** | **Case No.:**<br>**Division:**<br><br>**JURY TRIAL DEMAND** |

### COMPLAINT

Plaintiffs, for their claims against the above-named Defendants, state and allege the following:

### JURISDICTION AND VENUE

1.    As the instant case presents issues of federal law, original jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C §§ 1331 and 1343.

2.    To the extent that the instant case presents issues of state law, such issues of state law are so related to and form part of the same case or controversy as the issues of

federal law for which the Court has original jurisdiction. Therefore, supplemental jurisdiction over the issues of state law in this forum is proper, pursuant to 28 U.S.C. § 1367(a).

3.　　　Venue is proper in the United States District Court Western District of Missouri, pursuant to 28 U.S.C. § 1391(b), as the claims arose in this district and all parties reside within the district.

## PLAINTIFFS

4.　　　Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows

5.　　　JoAnn Stinnett ("JoAnn") died on August 6, 2015. Prior to her death, Jo Ann was a resident at Worth County Convalescent Center located at 503 East Fourth, Grant City, MO 64456.

6.　　　Plaintiffs Debra Moore and Gail MacMurray are surviving daughters of JoAnn.

7.　　　As the natural children of JoAnn, Plaintiffs are members of the class of individuals authorized to pursue any wrongful death claim involving JoAnn pursuant to RSMo § 537.080.

## AGENCY

8.　　　Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows

9.　　　The negligent acts and omissions alleged herein were committed by the employees, agents and/or servants of Worth County Nursing Home District while acting within the scope and course of their employment for Worth County Nursing Home District.

2

10. Specifically, at all times relevant, Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD acted as agents of Worth County Nursing Home District.

## DEFENDANTS

11. Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

12. Worth County Nursing Home District, by and through its Board of Directors, obtained a license from the Missouri Department of Health & Senior Services to operate a 50-bed nursing home located at 503 East Fourth, Grant City, MO 64456, known as Worth County Convalescent Center.

13. The Worth County Nursing Home District can be served through the Worth County Clerk, Roberta Owens, pursuant to Mo. Rev. Stat. 506.150.1(5), located at 11 W. 4th Street, Grant City, Missouri 64456.

14. The Worth County Nursing Home District is not protected by Missouri's sovereign immunity statutes in a wrongful death case pursuant to *Rush v. Senior Citizens Nursing Home*, 212 SW 3d 155 (Mo. App. W.D. 2006).

15. The nursing home license issued to Worth County Nursing Home District that was in effect at all relevant times herein, had an effective date of January 1, 2014 and an expiration date of December 31, 2015.

16. As the licensee, Worth County Nursing Home District, by and through its Board of Directors, is a political entity legally responsible for the operation of Worth County Convalescent Center.

17.     There is and has been no entity by the name "Worth County Convalescent Center" registered with the Missouri Secretary of State to conduct business in Missouri any time relevant to this action.

18.     No person or active entity has registered with the Missouri Secretary of State to use the name "Worth County Convalescent Center" as an assumed name in Missouri at any time relevant to this action.

19.     At all times relevant to this action, Worth County Nursing Home District operated the Worth County Convalescent Center nursing home as a Medicare-certified facility.

20.     At all times relevant to this action, Worth County Nursing Home District operated the Worth County Convalescent Center nursing home as a Medicaid-certified facility.

21.     Worth County, as the owner and operator of the Worth County Nursing Home District d/b/a Worth County Convalescent Center nursing home, chose to accept federal funding under Title XIX of the Social Security Act, codified at 42 U.S.C. §§ 1396-1396v (popularly known as the "Medicaid Act").

22.     By choosing to accept this federal funding, Worth County Nursing Home District had a duty to comply with the Medicaid Act, including the Federal Nursing Home Reform Act codified at 42 U.S.C. § 1396r, in its ownership and operation of Worth County Convalescent Center nursing home at all times relevant to this action.

23.     Beverly Miller based on information and belief, has been at all times relevant to this action a resident of Missouri, currently residing in Grant City, Missouri (Worth County).

4

24.     Beverly Miller can be served at 2 W. Lovers Ln., Grant City, Missouri 64456.

25.     Beverly Miller has been at all relevant times to this action acting under color of law as the Administrator of Worth County Convalescent Center.

26.     As the Administrator for Worth County Convalescent Center, Beverly Miller was responsible for planning, organizing, directing, and controlling the operation of the nursing home, and ensuring compliance with the Medicaid Act, including the Federal Nursing Home Reform Act (42 U.S.C. § 1396r) and regulations promulgated thereto (42 C.F.R. § 483, *et seq*.).

27.     Jennifer Runnels based on information and belief, has been at all times relevant to this action a resident of Missouri, currently residing in Albany, Missouri (Gentry County).

28.     Jennifer Runnels can be served at 403 W. Rigney St., Albany, Missouri 64402.

29.     Jennifer Runnels has been at all relevant times to this action acting under color of law as the Director of Nursing for Worth County Convalescent Center.

30.     As the Director of Nursing for Worth County Convalescent Center, Jennifer Runnels was responsible for assuring that a comprehensive plan of care was established and implemented for each resident in compliance with the Medicaid Act, including the Federal Nursing Home Reform Act (42 U.S.C. § 1396r) and regulations promulgated thereto (42 C.F.R. § 483, *et seq*.).

31.     Amrit Singh, MD based on information and belief, has been at all times relevant to this action a resident of Missouri, currently residing in Maryville, Missouri (Nodaway County).

32.     Amrit Singh, MD can be served at 114 E. South Hills Dr., Maryville, Missouri 64468.

33.     Amrit Singh, MD has been at all relevant times to this action acting under color of law as the facility physician for Worth County Convalescent Center.

34.     As the facility physician for Worth County Convalescent Center, Amrit Singh, MD was responsible for ensuring that each resident received the necessary medical care in compliance with the Medicaid Act, including the Federal Nursing Home Reform Act (42 U.S.C. § 1396r) and regulations promulgated thereto (42 C.F.R. § 483, *et seq.*).

## WORTH COUNTY CONVALESCENT CENTER'S TROUBLED HISTORY

35.     Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

36.     Worth County Nursing Home District has routinely violated the Federal Nursing Home Reform Act and regulations thereto as a result of its ownership, administration, management, and operation of the Worth County Convalescent Center.

37.     The federal and state governments have issued citations to Worth County Nursing Home District d/b/a Worth County Convalescent Center for violations of the Federal Nursing Home Reform Act and regulations thereto, including the following:

   a.  Citation for violating 42 C.F.R. § 483.20(k)(3)(ii) for failing to follow the plan of care of its residents;

   b.  Citation for violating 42 C.F.R. § 483.25(h) for failing to ensure adequate interventions had been implemented to minimize the risk of further injuries related to falls for a resident;

   c.  Citation for violating 42 C.F.R. § 483.60 for failing to ensure medication labels were accurate for its residents;

   d.  Citation for violating 42 C.F.R. § 483.15(a) for failing to promote each resident's care needs in a manner that preserved a resident's dignity;

e. Citation for violating 42 C.F.R. § 483.25(m) for failing to ensure that its residents were free of medication error rates of 5% or more;

f. Citation for violating 42 C.F.R. § 483.10(d)(3) for failing to revise the plan care of residents who were monitored for accidents; and

g. Citation for violating 42 C.F.R. § 483.20(k) for failing to provide services in accordance with the resident's written plan of care.

## FACTS COMMON TO ALL CAUSES OF ACTION

38.     Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

39.     At all times material hereto JoAnn was in a defenseless and dependent condition and required an indwelling catheter.

40.     As a result of her defenseless and dependent condition, JoAnn relied upon the Defendants to provide for her safety, protection, care and treatment.

41.     During her residency at Worth County Nursing Home District d/b/a Worth County Convalescent Center JoAnn was allowed to sustain injuries as a result of negligent care and treatment, including but not limited to, contracting a urinary tract infection leading to a kidney infection and subsequent septic shock which caused pain, suffering, and mental anguish and death on August 6, 2015.

42.     In fact, according to JoAnn's death certificate, the cause of death was septic shock caused by a urinary tract infection.  Specifically:

a. On July 12, 2015, Worth County Convalescent Center reported that Jo Ann's catheter was "plugged" and that she had "cloudy urine."

b. Worth County Convalescent Center conducted a urinalysis because of a suspected urinary tract infection.  The urinalysis showed that Jo Ann suffered from an "Escherichia coli" urinary tract infection.  The Antimicrobial Susceptibility Report included with the results showed that "Escherichia coli" was resistant to the Ciprofloxacin antibiotic.

7

c. Worth County Convalescent Center faxed these results to the facility physician, Amrit Singh, MD, the same day they were received on July 12, 2015.

d. Worth County Convalescent Center also reported that Jo Ann had "very odorous urine" that she had been "needing her cath, changed r/t bing plugged," and that she had "recurring UTI's."

e. Neither Worth County Convalescent Center nor Amrit Sing, MD, prescribed an antibiotic to treat the urinary tract infection until July 16 – four days after the urinalysis results. Worth County Convalescent Center physician – Amrit Singh, MD – then prescribed Ciprofloxacin despite knowing that the urinalysis report showed that Jo Ann's infection was resistant to this antibiotic. Jo Ann received her last dose of Ciprofloxacin on July 23, 2015.

f. On July 28, 2015, Worth County Convalescent Center's physician – Amrit Singh, MD, saw Jo Ann and purportedly "reviewed [all her] medications. That same day, Amrit Singh prescribed "Tramadol 50mg, q 8 hrs given prn" to treat Jo Ann's increased pain. Prior to this date, Worth County Convalescent Center and Amrit Singh, MD treated Jo Ann's pain with Tylenol.

g. There are no nursing notes between July 28 and August 5, 2015, despite the fact that during this time period, JoAnn's urine became very odorous.

h. The Activities of Daily Living sheets also reflect a downward trend in JoAnn's appetite beginning on July 28, 2015.

i. The PRN sheets also showed that Jo Ann complained of severe discomfort and back pain between August 1 and 6: 8/1/15, 10pm, Tramadol 50mg, general discomfort; 8/2/15, 12:45pm, Tramadol 50mg, general discomfort; 8/3/15, 7:50pm, Tramadol 50 mg, back pain; 8/4/15, 11:00am, Tramadol 50 mg, foot pain; 8/4/15, 10:30pm, Tramadol 50mg, severe leg pain; 8/4/15, 10:30pm, Tylenol 500mg, severe leg pain; 8/5/15, 10:00pm, Tramadol 50mg, back pain; 8/6/15, 5:30am, Tylenol, Temperature 101.8.

j. The first nursing notes in eight days – on August 5, 2015 – states that Worth County Convalescent Center's physician – Amrit Singh, MD – again ordered Ciprofloxacin 250mg to treat Jo Ann's infection. Unfortunately, this was the exact antibiotic and dosage ordered on July 16 despite the fact that Worth County Convalescent Center and Amrit Singh, MD knew this particular infection was resistant to the medication.

k. Worth County Convalescent Center reported at 5:40am on August 6, 2015, that Jo Ann was vomiting, suffering from nausea, and had a fever of 101.8. By 7:15am, Jo Ann was not speaking clearly and was sent to the emergency room.

8

l.  Upon arrival to the hospital, Jo Ann was "[a]wake but somnolent [and] able to say help me" but otherwise [unable to] respond to specific questioning." Doctors determined that Jo Ann suffered from "Septic Shock Infection [that was] is secondary to complicated urinary tract infection with presumed bacteremia. She has MODS with renal, cardiac, neurologic and hepatic dysfunction."

m.  Doctors further described Jo Ann's condition: Patient is an 80 y/o female who presents from the nursing home for altered mental status. She has an indwelling urinary catheter due to nonfunctioning bladder stimulator. She was started in ciprofloxacin yesterday for a UTI. This morning she was lethargic and confused. Her blood pressure was noted to be in the 80's systolic. Due to this she was brought to the ED. In the ED she was found to be hypotensive. She received multiple fluid boluses however her urine out put was minimal and her vitals only minimally improved. Due to this she was started on levophed. Her MAP improved to 77. Based on the above patient is critically ill and will require critical care admission. If she survives she will require 2 midnights. Based on the 2 midnight rule she will be made inpatient in the ICU. If she is not admitted to the ICU she will die *and even with this her chance of survival is grim*.

n.  Jo Ann passed away at 8:55pm on August 6, 2015, due to "septic shock from UTI."

o.  The August 6 urine culture showed that "Escherichia coli" was the infection that caused her death. Unsurprisingly, the hospital urinalysis showed that it was resistant to the Ciprofloxacin antibiotic.

## COUNT I
**Deprivation of Civil Rights Secured by the U.S. Constitution, Amendment XIV § 1 Enforceable via 42 U.S.C. § 1983 –** *Monell v. Dep't of Social Services* **– Wrongful Death Against Worth County Nursing Home District**

43.    Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

44.    Worth County Nursing Home District d/b/a Worth County Convalescent Center was acting under color of state law in its ownership and operation of the Worth County Convalescent Center nursing home at all times relevant to this action.

9

45.     Worth County Nursing Home District d/b/a Worth County Convalescent Center's following conduct was a violation of JoAnn's due process right to life secured by the U.S. Constitution, Amendment XIV §1:

a.  By failing to ensure JoAnn received appropriate medication to prevent the development and/or worsening of urinary tract infection(s);

b.  By failing to timely, consistently, and properly assess and document JoAnn's physical condition;

c.  By failing to adequately assess JoAnn's risk for a urinary tract infection and resulting sepsis;

d.  By failing to provide adequate supervision and/or intervention to address JoAnn's risk of contracting a urinary tract infection and resulting sepsis;

e.  By failing to provide adequate nursing staff to ensure JoAnn's 24-hour protective oversight and supervision;

f.  By failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of JoAnn;

g.  By failing to provide competent and qualified staff;

h.  By failing to provide adequate training to staff regarding the prevention of urinary tract infections and sepsis;

i.  By failing to provide adequate supervision of staff regarding the prevention of urinary tract infections and sepsis;

j.  By failing to enact and carry out an adequate care plan in regard to JoAnn's risk for a urinary tract infection and resulting sepsis;

k.  By failing to timely report to a physician changes in the condition of JoAnn;

l.  By failing to carry out the instructions of JoAnn's physician;

m.  By failing to adequately, timely and consistently prevent, assess, and treat JoAnn's risk for a urinary tract infection and resulting sepsis;

n.  By failing to timely transfer JoAnn to a facility that could provide her adequate care;

o. By failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment and treatment of resident at risk for a urinary tract infection and resulting sepsis; and

p. By failing to carry out and follow standing orders, instructions and protocol regarding the prevention of urinary tract infections and sepsis.

46. Worth County Nursing Home District d/b/a Worth County Convalescent Center failures as described above directed its employees and agents to violate JoAnn's due process right to life secured by the U.S. Constitution, Amendment XIV §1

47. Worth County Nursing Home District d/b/a Worth County Convalescent Center, with deliberate indifference to the rights of residents at the Worth County Convalescent Center, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern, and practice on the part of its nursing staff and physician, of failing to provide for the safety and general well-being of residents as described above in violation of JoAnn's due process right to life secured by the U.S. Constitution, Amendment XIV §1.

48. The above described policy, custom, and practice of Worth County Nursing Home District d/b/a Worth County Convalescent Center to the aforementioned constitutional rights was a direct and proximate cause of JoAnn's wrongful death.

49. As a proximate result of Worth County Nursing Home District d/b/a Worth County Convalescent Center actionable violations of JoAnn's rights and its derogations of constitutional responsibilities described above, JoAnn was seriously injured beginning on or about July 12, 2015, and continuing until her death on August 6, 2015. As such, Plaintiffs are entitled to recover for the following damages:

a. those damages contemplated under Mo. Rev. Stat. 537.090, including but not limited to pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which Plaintiffs have been deprived by reason of JoAnn's death, in addition to damages JoAnn suffered between the time of injury and the time of death;

b. attorneys' fees and costs, pursuant to 42 U.S.C. §§ 1983 and 1988; and

c. other losses and damages permitted by law in an amount as yet to be determined

WHEREFORE, Plaintiffs individually, and in a representative capacity for all persons identified by RSMO § 573.080, pray for judgment against Worth County Nursing Home District in an amount a jury deems fair and reasonable under the circumstances, including, but not limited to, medical expenses, actual damages and punitive damages, the costs of this action, including attorneys' fees and for such other and further relief as the Court deems just and proper.

### COUNT II
### Deprivation of Civil Rights Secured by the Federal Nursing Home Reform Act
### Enforceable via 42 U.S.C. § 1983 – *Monell v. Dep't of Social Services*
### Wrongful Death Against Worth County Nursing Home District

50. Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

51. Worth County Nursing Home District d/b/a Worth County Convalescent Center was acting under color of state law in its ownership and operation of the Worth County Convalescent Center nursing home at all times relevant to this action.

52. Worth County Nursing Home District d/b/a Worth County Convalescent Center's failure's as described above were a violation of JoAnn's rights secured by the Federal Nursing Home Reform Act and regulations promulgated thereto, including the following rights:

a. The right to receive services with reasonable accommodation of individual needs and preferences, except where the health or safety of the individual or other residents would be endangered as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(v)(I);

b. The right to be free from physical and mental abuse as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(ii); and

c. Any other right established by the Secretary as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(xi) including, but not limited to:

   i. The right to receive appropriate treatment and services to prevent urinary tract infections and to restore as much normal bladder function as possible as guaranteed by 42 C.F.R. § 483.25(d)(2);

   ii. The right to have a comprehensive care prepared by an interdisciplinary team, that includes the attending physician, a registered nurse with responsibility for the resident, and other appropriate staff in disciplines as determined by the resident's needs, and, to the extent practicable, the participation of the resident, the resident's family or the resident's legal representative; and periodically reviewed and revised by a team of qualified persons after each assessment as guaranteed by 42 C.F.R. § 483.20(k)(ii);

   iii. The right have the care plan provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being as guaranteed by 42 C.F.R. § 483.20(k)(i); and

   iv. The right to be free of any significant medication errors as guaranteed by 42 C.F.R. § 483.20(m).

53.    Worth County Nursing Home District d/b/a Worth County Convalescent Center's failures as described above directed its employees and agents to violate JoAnn's aforementioned rights secured by the Federal Nursing Home Reform Act and regulations promulgated thereto.

54. Worth County Nursing Home District d/b/a Worth County Convalescent Center's, with deliberate indifference to the rights of residents at the Worth County Convalescent Center, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern, and practice on the part of its nursing staff and physician, of failing to provide for the safety and general well-being of residents in violation of JoAnn's rights secured by the Federal Nursing Home Reform Act and regulations promulgated thereto, including the following rights:

    a. The right to receive services with reasonable accommodation of individual needs and preferences, except where the health or safety of the individual or other residents would be endangered as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(v)(I);

    b. The right to be free from physical and mental abuse as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(ii); and

    c. Any other right established by the Secretary as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(xi) including, but not limited to:

        i. The right to receive appropriate treatment and services to prevent urinary tract infections and to restore as much normal bladder function as possible as guaranteed by 42 C.F.R. § 483.25(d)(2);

        ii. The right to have a comprehensive care prepared by an interdisciplinary team, that includes the attending physician, a registered nurse with responsibility for the resident, and other appropriate staff in disciplines as determined by the resident's needs, and, to the extent practicable, the participation of the resident, the resident's family or the resident's legal representative; and periodically reviewed and revised by a team of qualified persons after each assessment as guaranteed by 42 C.F.R. § 483.20(k)(ii);

        iii. The right have the care plan provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being as guaranteed by 42 C.F.R. § 483.20(k)(i); and

        iv. The right to be free of any significant medication errors as guaranteed by 42 C.F.R. § 483.20(m).

55. The above described policy, custom, and practice of Worth County Nursing Home District d/b/a Worth County Convalescent Center to the aforementioned constitutional rightins was a direct and proximate cause of JoAnn's wrongful death.

56. As a proximate result of Worth County Nursing Home District d/b/a Worth County Convalescent Center actionable violations of JoAnn's rights and its derogations of constitutional responsibilities described above, JoAnn was seriously injured beginning on or about July 12, 2015 and continuing until her death on August 6, 2015. As such, Plaintiff's are entitled to recover for the following damages:

  a. those damages contemplated under Mo. Rev. Stat. 537.090, including but limited to pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which Plaintiffs have been deprived by reason of JoAnn's death, in addition to damages JoAnn suffered between the time of injury and the time of death;

  b. attorneys' fees and costs, pursuant to 42 U.S.C. §§ 1983 and 1988; and

  c. other losses and damages permitted by law in an amount as yet to be determined.

WHEREFORE, Plaintiffs individually, and in a representative capacity for all persons identified by RSMO § 573.080, pray for judgment against Worth County Nursing Home District in an amount a jury deems fair and reasonable under the circumstances, including, but not limited to, medical expenses, actual damages and punitive damages, the costs of this action, including attorneys' fees and for such other and further relief as the Court deems just and proper.

## COUNT III
### Deprivation of Civil Rights Secured by the U.S. Constitution, Amendment XIV § 1
### Enforceable via 42 U.S.C. § 1983
### *Monell v. Dep't of Social Services* – Wrongful Death
### Against Beverly Miller, Jennifer Runnels, and Amrit Singh, MD

57.     Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

58.     Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD had a duty to provide for the safety and general well-being of JoAnn, including, but not limited, preventing the contraction and/or worsening of urinary tract infection(s).

59.     Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD under the color of state law, acted with deliberate indifference to JoAnn's medical and urinary needs during her stay at the Worth County Convalescent Center in violation of her due process right to life secured by the U.S. Constitution, Amendment XIV § 1.

60.     Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD under the color of state law, knew of and disregarded an obvious and serious risk to JoAnn's health and safety and acted with deliberate indifference.

61.     Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD subjected JoAnn to these deprivations of her rights by acting with reckless disregard for whether JoAnn's rights would be violated by their actions.

62.     JoAnn died as a direct and proximate result of Beverly Miller, Jennifer Runnels, and Amrit Singh, MD's acts and omissions, and Plaintiffs are entitled to the following damages:

a. those damages contemplated under Mo. Rev. Stat. 537.090, including but limited to pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which Plaintiffs have been deprived by reason of JoAnn's death, in addition to damages JoAnn suffered between the time of injury and the time of death;

b. attorneys' fees and costs, pursuant to 42 U.S.C. §§ 1983 and 1988; and

c. other losses and damages permitted by law in an amount as yet to be determined

WHEREFORE, Plaintiffs individually, and in a representative capacity for all persons identified by RSMO § 573.080, pray for judgment against Beverly Miller, Jennifer Runnels, and Amrit Singh, MD in an amount a jury deems fair and reasonable under the circumstances, including, but not limited to, medical expenses, actual damages and punitive damages, the costs of this action, including attorneys' fees and for such other and further relief as the Court deems just and proper.

**COUNT IV**
**Deprivation of Civil Rights Secured by the Federal Nursing Home Reform Act**
**Enforceable via 42 U.S.C. § 1983 — Wrongful Death**
**Against Beverly Miller, Jennifer Runnels, and Amrit Singh, MD**

63. Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

64. Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD had a duty to provide for the safety and general well-being of JoAnn, including, but not limited to, preventing the contraction and/or worsening of urinary tract infection(s).

17

65. Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD under the color of state law, acted with deliberate indifference to JoAnn's medical needs during her stay at the Worth County Convalescent Center in violation of her civil rights secured by the Federal Nursing Home Reform Act and regulations promulgated thereto, including the following rights:

    a. The right to receive services with reasonable accommodation of individual needs and preferences, except where the health or safety of the individual or other residents would be endangered as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(v)(I);

    b. The right to be free from physical and mental abuse as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(ii); and

    c. Any other right established by the Secretary as guaranteed by 42 U.S.C. § 1396r(c)(1)(A)(xi) including, but not limited to:

        i. The right to receive appropriate treatment and services to prevent urinary tract infections and to restore as much normal bladder function as possible as guaranteed by 42 C.F.R. § 483.25(d)(2);

        ii. The right to have a comprehensive care prepared by an interdisciplinary team, that includes the attending physician, a registered nurse with responsibility for the resident, and other appropriate staff in disciplines as determined by the resident's needs, and, to the extent practicable, the participation of the resident, the resident's family or the resident's legal representative; and periodically reviewed and revised by a team of qualified persons after each assessment as guaranteed by 42 C.F.R. § 483.20(k)(ii);

        iii. The right have the care plan provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being as guaranteed by 42 C.F.R. § 483.20(k)(i); and

        iv. The right to be free of any significant medication errors as guaranteed by 42 C.F.R. § 483.20(m).

66. Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD under the color of state law, knew of and disregarded an obvious and serious risk to JoAnn's health and safety and acted with deliberate indifference.

67.     Defendants Beverly Miller, Jennifer Runnels, and Amrit Singh, MD subjected JoAnn to these deprivations of her rights by acting with reckless disregard for whether JoAnn's rights would be violated by their actions.

68.     JoAnn died as a direct and proximate result of Beverly Miller, Jennifer Runnels, and Amrit Singh, MD's acts and omissions, and Plaintiffs are entitled to the following damages:

    a.  those damages contemplated under Mo. Rev. Stat. 537.090, including but limited to pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which Plaintiffs have been deprived by reason of JoAnn's death, in addition to damages JoAnn suffered between the time of injury and the time of death;

    b.  attorneys' fees and costs, pursuant to 42 U.S.C. §§ 1983 and 1988; and

    c.  other losses and damages permitted by law in an amount as yet to be determined.

WHEREFORE, Plaintiffs individually, and in a representative capacity for all persons identified by RSMO § 573.080, pray for judgment against Beverly Miller, Jennifer Runnels, and Amrit Singh, MD in an amount a jury deems fair and reasonable under the circumstances, including, but not limited to, medical expenses, actual damages and punitive damages, the costs of this action, including attorneys' fees and for such other and further relief as the Court deems just and proper.

**COUNT V**
**Ordinary Negligence — Wrongful Death**
*Tousignant v. St. Louis County*
**Against All Defendants**

69.     Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

19

70. Pursuant to 28 U.S.C. § 1367(a), Plaintiffs' ordinary negligence claim for wrongful death is so related to Counts I through IV (for which the Court has original jurisdiction) that the claims form part of the same case or controversy.

71. Defendants and their agents, servants and/or employees had a duty to possess and use that degree of care, skill, and learning used under the same or similar circumstances by other members of their profession in the treatment of JoAnn.

72. During the course of their care and treatment of JoAnn, Defendants and their agents, servants and/or employees breached their duty and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including:

   a. By failing to ensure JoAnn received appropriate medication to prevent the development and/or worsening of urinary tract infection(s);

   b. By failing to timely, consistently, and properly assess and document JoAnn's physical condition;

   c. By failing to adequately assess JoAnn's risk for a urinary tract infection and resulting sepsis;

   d. By failing to provide adequate supervision and/or intervention to address JoAnn's risk of contracting a urinary tract infection and resulting sepsis;

   e. By failing to provide adequate nursing staff to ensure JoAnn's 24-hour protective oversight and supervision;

   f. By failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of JoAnn;

   g. By failing to provide competent and qualified staff;

   h. By failing to provide adequate training to staff regarding the prevention of urinary tract infections and sepsis;

i. By failing to provide adequate supervision of staff regarding the prevention of urinary tract infections and sepsis;

j. By failing to enact and carry out an adequate care plan in regard to JoAnn's risk for a urinary tract infection and resulting sepsis;

k. By failing to timely report to a physician changes in the condition of JoAnn;

l. By failing to carry out the instructions of JoAnn's physician;

m. By failing to adequately, timely and consistently prevent, assess, and treat JoAnn's risk for a urinary tract infection and resulting sepsis;

n. By failing to timely transfer JoAnn to a facility that could provide her adequate care;

o. By failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment and treatment of resident at risk for a urinary tract infection and resulting sepsis; and

p. By failing to carry out and follow standing orders, instructions and protocol regarding the prevention of urinary tract infections and sepsis.

73. Worth County Nursing Home District, as the owners, operators, and/or managers of skilled care nursing facilities licensed by the State of Missouri and accepting Medicare and Medicaid funds, were subject to regulations promulgated by the Missouri Division of Social Services and under the Social Security Act.

74. While providing care and treatment to JoAnn, Worth County Nursing Home District and their agents, servants and/or employees breached their duty to JoAnn and were guilty of acts of negligence and negligence, per se, in violating regulations governing residential care facilities including but not limited to the following:

a. 19 C.S.R. 30-85.042(3). The operator shall be responsible to assure compliance with all applicable laws and rules. The administrator shall be fully authorized and empowered to make decisions regarding the operation of the facility and shall be held responsible for the actions of all employees. The administrator's responsibilities shall include the oversight of residents to assure that they receive appropriate nursing and medical care;

b. 19 C.S.R. 30-85.042(6). The facility shall not knowingly admit or continue to care for residents whose needs cannot be met by the facility directly or in cooperation with outside resources. Facilities which retain residents needing skilled nursing care shall provide licensed nurses for these procedures;

c. 19 C.S.R. 30-85.042(13). The facility shall develop policies and procedures applicable to its operation to insure the residents' health and safety and to meet the residents' needs. At a minimum there shall be policies covering personnel practices, admission, discharge, payment, medical emergency treatment procedures, nursing practices, pharmaceutical services, social services, activities, dietary, housekeeping, infection control, disaster and accident prevention, residents' rights and handling residents' property;

d. 19 C.S.R. 30-85.042(15). All personnel shall be fully informed of the policies of the facility and of their duties;

e. 19 C.S.R. 30-85-14.042(16). All persons who have any contact with the residents in the facility shall not knowingly act or omit any duty in a manner which would materially and adversely affect the health, safety, welfare or property of a resident;

f. 19 C.S.R. 30-85.042(22). The facility must ensure there is a system of in-service training for nursing personnel which identifies training needs related to problems, needs, care of residents and Infection control and is sufficient to ensure staff's continuing competency;

g. 19 C.S.R. 30-85.042(37). All facilities shall employ nursing personnel in sufficient numbers and with sufficient qualifications to provide nursing and related services which enable each resident to attain or maintain the highest practicable level of physical, mental and psychosocial well-being. Each facility shall have a licensed nurse in charge who is responsible for evaluating the needs of the residents on a daily and continuous basis to ensure there are sufficient trained staff present to meet those needs;

h. 19 C.S.R. 30-85.14.042(66). Each resident shall receive twenty four (24)-hour protective oversight and supervision;

i. 19 C.S.R. 15-14.042(67). Each resident shall receive personal attention and nursing care in accordance with his/her condition and consistent with current acceptable nursing practice;

j. 19 C.S.R. 30-85.042(79). In the event of accident, injury or significant change in the resident's condition, facility staff shall notify the resident's physician in accordance with the facility's emergency treatment policies which have been approved by the supervising physician;

k. 19 C.S.R. 30-85.042(80). In the event of accident, injury or significant change in the resident's conditions, facility staff shall immediately notify the person designated in the resident's record as the designee or responsible party; and

l. 19 C.S.R. 30-85.042(81). Staff shall inform the administrator of accidents, injuries or unusual occurrences which adversely affect, or could adversely affect the resident. The facility shall develop and implement responsive plans of action.

75. JoAnn was a member of the class of persons intended to be protected by the enactment of the aforementioned regulations.

76. The physical injuries JoAnn were the type of injuries that the regulations were enacted to prevent.

77. As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, JoAnn suffered severe pain, anxiety, mental distress, and death.

78. As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, Plaintiff and the other heirs of JoAnn as defined by RSMo § 537.080, suffered damages including, but not limited to, loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, bereavement and mental anguish.

WHEREFORE, Plaintiffs individually, and in a representative capacity for all persons identified by RSMO § 573.080, prays for judgment against all Defendants in an amount a jury deems fair and reasonable under the circumstances, including, but not limited to, medical expenses, actual damages and punitive damages, the costs of this action, including attorneys' fees and for such other and further relief as the Court deems just and proper.

## COUNT VI
## Punitive Damages Against All Defendants

79.     Plaintiffs incorporate by reference the allegations previously set forth and further allege as follows.

80.     The actions of Defendants were malicious, wanton, grossly negligent and reckless, and performed in reckless disregard of the welfare and safety of JoAnn and others, such that, in addition to damages for pain and suffering, Defendants are liable for punitive damages for their grossly negligent care of JoAnn.

81.     At the time Defendants caused/failed to treat and/or prevent JoAnn's urinary tract infection and subsequent sepsis, they knew that their conscious disregard to provide adequate staff; train, and/or supervise their agents, servants and/or employees; provide services with reasonable accommodation of individual needs and preferences, ensure JoAnn was free from physical and mental abuse; provide a comprehensive care plan, and ensure JoAnn was free from medication errors as required by state and federal law created a high degree of probability of injury to residents, and consciously disregarded the safety of all residents including JoAnn.

82.     Accordingly, Defendants showed a complete indifference to, or conscious disregard, for the safety of others, including JoAnn and warrants punitive damages be assessed against Defendants in an amount that is fair and reasonable and will punish Defendants and deter them and others from similar conduct.

83.     As a direct and proximate result of Defendants negligence, and complete indifference to, or conscious disregard, for the safety of others, including JoAnn, JoAnn was harmed and suffered damages, including but not limited to pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; and other damages.

WHEREFORE, Plaintiffs respectfully pray for a judgment against all Defendants for a sum that a jury determines to be fair and reasonable, for actual and punitive damages together with the costs and expenses herein occurred, attorneys' fees and for such other relief as this Court deems just and proper.

Respectfully submitted,

THE STEELE LAW FIRM

/s/ Jonathan Steele
Jonathan Steele          MO # 63266
7500 College Blvd. Suite 700
Overland Park, KS 66210
Telephone: (913) 608-4133
E-mail: jonathan@jsteelelawfirm.com

*Attorney for Plaintiffs*